# EXHIBIT 1

1

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

2

3

4

5

6

Attorneys for Plaintiff

7

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/25/2023 12:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## COUNTY OF LOS ANGELES

10

11

BONNIE REYES, individually and on behalf of all others similarly situated,

12

Plaintiff,

13

v.

14

PETER THOMAS ROTH LABS LLC., a New York limited liability company,

15

16

Defendant.

Case No. 23STCV23090

**CLASS ACTION COMPLAINT**

1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*
3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      Defendant manufactures and sells a popular beauty product, Peter Thomas Roth Water Drench Hyaluronic Cloud Rich Barrier Moisturizer (the "Product"), throughout the United States. To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in an oversized box that does not reasonably inform consumers that they are more than half empty. Defendant dupes unsuspecting consumers across America to pay premium prices for empty space. Below is a true and correct image of Defendant's Product in an opaque container inside an oversized box evidencing the deception. The photographs shows the Product in the oversized box as well as an opaque container with a false bottom that is almost 50% empty.







- 1 -

2.      Defendant markets the Product in a systematically misleading manner by representing it as adequately filled when, in fact, it contains an unlawful amount of empty space or "slack-fill." Defendant underfills the Product for no lawful reason. The front of the Product's packaging does not include any information that would reasonably apprise Plaintiff of the quantity of product relative to the size of the container, such as a fill line or indication that the inner lining of the container restricts the amount of product from filling what appears from the outside to be a full, round container.

3.      Defendant underfills the Product to save money and to deceive consumers into purchasing the Product over its competitors' products. Defendant's slack-fill scheme not only harms consumers, but it also harms its competitors who have implemented labeling changes designed to alert consumers to the true amount of product in each container.

4.      Accordingly, Defendant has violated the California Consumers Legal Remedies Act ("CLRA"), particularly California Civil Code sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendant has committed per se violations of the Unfair Competition Law ("UCL"), Business & Professions Code section 17200, *et seq.* and the False Advertising Law ("FAL"), Business & Professions Code section 17500, *et seq.*

5.      Plaintiff and other California consumers who have purchased the Product have thus suffered injuries in fact caused by the false, unfair, deceptive, unlawful, and misleading practices set forth herein.

6.      Several California courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Winkelbauer v. Orgain Mgmt. et. al*, Case No. 20STCV44583 (L.A.S.C. May 20, 2021) (defendant's demurrer to claims involving slack-filled protein powder products overruled); *Merry, et al. v. International Coffee & Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (San Bernardino Superior Court Jan. 27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Tsuchiyama v. Taste of Nature, Inc.*, Case No. BC651252 (L.A.S.C. Feb. 28, 2018) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April

29, 2020) (certifying as a class action, over opposition, slack-fill claims brought under California consumer protection laws).

**PARTIES**

7.      Plaintiff is a resident of California.  Within the past year, Plaintiff purchased the Product for personal use.  Plaintiff relied upon the oversized box and opaque packaging, including the size of the container and product label, which was prepared and approved by Defendant and its agents, and disseminated state and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the container and product label to indicate that the amount of product contained therein was commensurate with the size of the container, and would not have purchased the Product, or would not have paid a price premium for the Product, had Plaintiff known that the size of the container and product label were false and misleading.  If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future. Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's representations about the Product.

8.      Defendant is a New York limited liability company that conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Product, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Product.

9.      In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, and deceptive representations to induce members of the public to purchase the Product. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

10.      Defendant, upon becoming involved with the manufacture, advertising, and sale of the Product, knew or should have known that its advertising of the Product's packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of product contained in the Product's packaging in order to convince the

public and consumers to purchase the Product, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

11.     Defendant has created and still perpetuates a falsehood that the Product's packaging contains an amount of product commensurate with the size of the package, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Product are false, misleading, and/or likely to deceive in violation of California packaging and advertising laws.

## JURISDICTION AND VENUE

12.     As a court of general jurisdiction, this Court has jurisdiction over this matter.

13.     Venue is appropriate in this case because a substantial portion of the class purchased the product in this County.

14.     Defendant is subject to personal jurisdiction in California based upon its sales of the product in this state.

## FACTUAL BACKGROUND

15.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase[1]; this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased[2].

16.     Accordingly, Defendant chose a certain size container for its Product to convey to consumers that they are receiving a certain and substantial amount of product commensurate with the size of the container.  Instead, consumers are receiving a substantial amount of nonfunctional slack-fill.

---

[1]  Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/         (last visited September 2023).
[2]  P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

17.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

18.     Defendant falsely represents the quantity of product in each of the Product's opaque containers through its packaging. The size of each container leads the reasonable consumer to believe he or she is purchasing a container full of product when in reality what they are actually receiving is significantly less than what is represented by the size of the container.

19.     Even if Plaintiff and other reasonable consumers of the Product had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight, they did not and would not have reasonably understood or expected such representations to translate to a quantity of product meaningfully different from their expectation commensurate with the size of the container.

20.     Prior to the point of sale, the Product's packaging does not allow for an accurate visual or audial confirmation of the quantity in the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Product before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Product.

21.     The other information that Defendant provides about the quantity of product on the label of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the container itself. For instance, *nothing* on the outside of the Product and its labels would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line or indicator of the inner shape of the insert actually containing the product.

22.     Disclosures of net weight in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Product containers that would be different from their expectation that the quantity commensurate with the size of the container.

23.     Because the packages are filled to about half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the containers are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the container, consistent with the law.

24.     Defendant can easily increase the quantity of product in each container (or, alternatively, decrease the size of the containers) significantly.

25.     Plaintiff would not have purchased the Product had Plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose.

**None of the Slack-Fill Statutory Exceptions Apply to the Product**

26.     None of the safe harbor exceptions for slack-fill at Business & Professions Code § 12606(b) apply to Defendant's Product.

**12606(b)(1)**: The slack-fill in the Product does not protect the contents of the packages.

**12606(b)(2)**: The machines used to package the Product would not be affected if there was more product added. At most, a simple recalibration of the machines would be required.

**12606(b)(3)**: The slack-fill present in the Product is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.  Even if *some* product settling may occur, there is no reason why the Product's containers are over 50% empty.

**12606(b)(4), (6)**: The slack-fill present in the Product does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

**12606(b)(5)**: The Product container is not a necessary part of the presentation of the Product. It does not constitute a significant in proportion of the value of the Product, nor have an independent function to hold the product, such as a gift combined with a container that is intended for further use after the product is consumed, or durable commemorative or promotional packages.

**12606(b)(7)**: The product container does not bear a reasonable relationship to the actual amount of product contained inside, and the dimensions of the actual Product container, the

Product, and/or the amount of product therein is not visible to the consumer at the point of sale, nor is dimension of the secondary use packaging, i.e. the plastic insert, visible to the consumer at the point of sale.

**12606(b)(8):** (A) The dimensions of the Product or immediate product container are not visible through the exterior packaging.  (B) The actual size of the Product or immediate product container is not clearly and conspicuously depicted on any side of the exterior packaging, nor accompanied by a clear and conspicuous disclosure that the depiction is the "actual size" of the Product or immediate Product container. (C) There is no line or a graphic that represents the Product or Product fill, nor any other indication of the actual plastic insert shape for the Product.

**12606(b)(9)**: There is no necessity of extra space in the Product to facilitate the mixing, adding, shaking, or dispensing of the product by consumers before use.

**12606(b)(10)**: The exterior packaging does not contain a product delivery or dosing device.

**12606(b)(11)**: The exterior packaging or immediate Product container is not a kit that consists of a system, or multiple components, designed to produce a particular result.

**12606(b)(12)**: The exterior packaging of the Product is not routinely displayed using tester units or demonstrations to consumers in retail stores, so that customers can see the actual, immediate container of the product being sold, or a depiction of the actual size thereof before purchase.

**12606(b)(13), (14), (15)**: The exterior packaging does not consist of single or multiunit presentation boxes of holiday or gift packages, is not for a combination of one purchased product, together with a free sample or gift, and does not include computer hardware or software.

**12606(b)(16)**: The mode of commerce allows the consumer to view or handle the physical Product container.

## **CLASS ACTION ALLEGATIONS**

27.     Plaintiff bring this action on behalf of all persons similarly situated. The Class which Plaintiff seeks to represent comprises:

1
2

**All Californians who purchased Defendant's Product in California during the four years preceding the filing of this action (the "Class").**

3

28.    Excluded from the Class are Defendant's officers, directors, and employees, and any

4

individual who received remuneration from Defendant in connection with that individual's use or

5

endorsement of the Product. Said definition may be further defined or amended by additional

6

pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

7

29.    The Class is comprised of many thousands of persons. The Class is so numerous that

8

joinder of all members is impracticable and the disposition of their claims in a class action will benefit

9

the parties and the Court.

10

30.    Common questions of law and fact exist as to all Class members and predominate over

11

questions affecting only individual Class members. Common questions of law and fact include, but are

12

not limited to, the following:

13

   a.   The true nature and amount of product contained in each Product's packaging;

14
15

   b.   Whether the marketing, advertising, packaging, labeling, and other promotional
        materials for the Product are deceptive;

16
17

   c.   Whether Defendant's conduct is an unlawful business act or practice within the
        meaning of Business & Professions Code § 17200, *et seq*.;

18
19

   d.   Whether Defendant's conduct is an unfair business act or practice within the meaning
        of Business & Professions Code § 17200, *et seq*.;

20
21

   e.   Whether Defendant's advertising is untrue or misleading within the meaning of
        Business & Professions Code § 17500, *et seq*.;

22
23

   f.   Whether Defendant made false and misleading representations in its advertising and
        labeling of the Product;

24

   g.   Whether Defendant knew or should have known that the misrepresentations were false;

25
26

   h.   Whether Plaintiff and the Class paid more money for the Product than they actually
        received;

27
28

   i.   How much more money Plaintiff and the Class paid for the Product than they actually
        received; and

j.   Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members.

31.   Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiff and members of the Class.

32.   Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

33.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff purchased the Product because of the size of the containers and the Product labels, which Plaintiff believed to be indicative of the amount of product contained therein as commensurate with the size of the container. Plaintiff relied on Defendant's representations and would not have purchased the Product if Plaintiff had known that the packaging, labeling, and advertising as described herein was false and misleading.

34.   The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions.

35.   A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

36.   Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

37.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,

## CALIFORNIA CIVIL CODE § 1750, *et seq*. ("CLRA")

38.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

39.     The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with the Sherman Law; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of product contained within each container, when it has not.

40.     Defendant packaged the Product in containers that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and the Class.

41.     Defendant deceived Plaintiff and the Class by misrepresenting the Product as having characteristics and quantities which it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

42.     Defendant deceived Plaintiff and the Class by packaging and advertising the Product with intent not to sell it as advertised and by intentionally underfilling the Product's containers and replacing product with nonfunctional slack-fill. In doing so, Defendant misrepresented and concealed

material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

43.     Defendant deceived Plaintiff and the Class by representing that the Product was supplied in accordance with an accurate representation as to the quantity of product contained therein when they were not. Defendant presented the physical dimensions of the Product's packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of product contained therein would be commensurate with the size of the packaging. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

44.     Defendant knew or should have known, through the exercise of reasonable care, that the Product's packaging was misleading.

45.     Defendant's actions as described herein were done with conscious disregard.

46.     Defendant's packaging of the Product was a material factor in Plaintiff's and the Class's decision to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth, Plaintiff and the Class would not have purchased the Product.

47.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct.

48.     Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2). In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Product that are not what they expected to receive due to Defendant's misrepresentations.

49.     Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively use nonfunctional slack-fill in the Product. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies. Further,

injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Product that has resulted from years of Defendant's unfair and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more Product, reshaping the refillable plastic insert so as not to be misleading and fit the outer aluminum container, or adding a disclosure regarding the shape of the plastic insert on the outside label of the Product. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the underfilled Product), rendering injunctive relief a necessary remedy.

50. Plaintiff has complied with all conditions precedent required by the CLRA to file this Complaint seeking damages, including providing appropriate pre-filing notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A. An Order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B. An order enjoining Defendant from continuing to package and/or label the Product as challenged herein;

C. Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

D. Restitution and/or disgorgement in an amount to be determined at trial;

E. Reasonable attorneys' fees and costs; and

F. Granting such other and further as may be just and proper.

1

Dated:  September 24, 2023

PACIFIC TRIAL ATTORNEYS, APC

2

By:

3

Scott. J. Ferrell
Attorneys for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -